IN THE United States District court for the Northern District of West Virginia

**FILED**
JUN 16 2020
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

Paul J. Bukovinsky II )
Plaintiff )
) Civil Action No.: 5:20-CU-114
vs. ) Law suit
) Bailey
Wheeling- Nisshin Inc. ) Mazzone
)
Defendant )
)

## Complaint for Employment Discrimination

## FACTS OF THE CASE

1. The plaintiff Paul J. Bukovinsky II who resides at 105 John Drive, Burgettstown, Pa 15021 is hereby filing this complaint for Employment Discrimination. The laws that the plaintiff is requesting relief for are American with disabilities act, Fair Labor Standards act, and the Civil Rights Act of 1964.

2. The plaintiff started working at the Wheeling – Nisshin plant on September 17, 2014. Since then the Plaintiff has been there the Plaintiff has had to suffer through discrimination and harassment. After Six months of employment the plaintiff was contacted by his supervisor Mike Stauver from Mckeen Group Inc. Mr. Stauver is the Vice President of McKeen Group. Mr. Stauver called the plaintiff because a supervisor with the Defendant filed a complaint against the plaintiff for alleging that he was sleeping and using his computer while on duty.

3. The Plaintiff doesn't know why he made that allegation because of the fact that the plaintiff had a medical condition that was preventing him to sleep. The plaintiff had to sleep in a 45% angle while he slept because of his medical problems. It wasn't until 4 months later when he had surgery to fix that problem. Pertaining to using his computer while on duty was also false. The plaintiff did have his computer, but his computer was in his car in a case. The plaintiff always had his computer and some court cases with him at all times because the plaintiff also does Pro Bono work for the state courts in Western Pennsylvania handling victim and child advocate cases.

4. The Plaintiff did receive his Law Degree in 2011 from an ABA accredited law school in Pittsburgh, Pa. That was the point that the supervisor Brandon Lash and other supervisors found out that the plaintiff received his law degree. After the supervisor found that out they still had made attacks on the plaintiff.

5. The other issues are that there were days that the plaintiff was denied a lunch break as required by West Virginia state law **Chapter 21 article 3 § 21-3-10A.** That states " During the course of a workday of six or more hours, all employers shall make available for each of their employees, at least twenty minutes for meal breaks, at times reasonably designated by the employer. This provision shall be required in all situations where employees are not afforded breaks/ or permitted to eat lunch while working." There has also been times that the plaintiff was yelled at for just using the restroom. The plaintiff only has one kidney and does use the restroom more often.

6. Every time the plaintiff tried to work while eating he would get yelled at and harassed. The Plaintiff while working at the scale house was never able or allowed meal breaks even a working meal break. What the defendant would do is schedule non- stop trucks from the hours of 06:00 hrs – 18:00 hrs Monday through Friday. Even after those hours every time the Plaintiff would try to have his meal break a truck would show up.

7. The only reason they do that is because that's when the shipping and receiving department is there. So if a truck shows up whoever is at the scale house can call them if a truck needs scheduled. The plaintiff has talked to the defendant about it because of the fact that the defendant doesn't use a scheduled time for scheduling trucks. The plaintiff even asked why don't they just change the system so trucks didn't need to be scheduled or let the security schedule the trucks? Some of the supervisors have agreed with the Plaintiff, but refuse to change the system.

8. There have been days that Security at the scale house had to wait hours for a supervisor to call them to schedule trucks. The security at the scale house would have to call the supervisor on duty

ONLY when the shipping and receiving department wasn't at the plant. Because of that fact there has been a long line of trucks backing up for a quarter of a mile to come in and get or drop off a load. When that happens the defendant would call up to the scale house and yell at me and others for the long line of trucks.

9. The Follansbee Police department has even told them that they can't block traffic. This has also interfered with emergency first responders from responding to an emergency. Even after the police have talked to them about it the defendant still refuses to change the system and try to prevent any trucks from backing up preventing the flow of traffic.

10. The plaintiff has also reporting reckless driving by their employees. Their employees have been driving fast through the property and going through the stop signs. Three times their employees have almost hit the plaintiff with their cars. Once an employee even laughed at the plaintiff after he almost hit his car once he drove through the stop sign. The plaintiff reported it, but the supervisor Rick Lash refused to put a stop to their employees being reckless. That is also a OSHA regulation.

11. The plaintiff also has noticed and reported employees when the employees had their family members drive into the plant. These are non employees and they have also had their children in the car. If something would have happened like an explosion of equipment failure those people and children would have gotten hurt or killed. Another OSHA regulation.

12. One of the supervisors named Mike McCardel always have sexually harassed the plaintiff and harassed him in general. Mike would refer to the plaintiff as " Fagot Guard" " Loser Guard" " Fucking Loser" " Fucking Idiot" and " Fagot". Some of these names were even used in front of the head supervisor Rick Lash and he only laughed and didn't say or do anything.

13. On 3/22/2019 the plaintiff was speaking with a supervisor named Jeff Legros at the main security office. Then Mike McCardel walked up to Jeff Legros and asked " Have you seen that Loser Guard?" Jeff replied " Who?" Then Mike said " You know that

Loser Guard named Paul." Jeff didn't respond to that comment. After Mike left, Jeff looks at the plaintiff and said " That wasn't right." The plaintiff told him that he always verbally harasses him.

14. On 3/24/2019 the Plaintiff was working at the main gate office when he heard a call over the radio for the on duty supervisor. On that day the supervisor was Mike McCardel. When the Plaintiff was going outside to smoke that is when he noticed an ambulance in the visitor parking lot. That is when the Plaintiff walked over and asked " What Happened?" The Officer from Follansbee, Wv Police department C.J. looked at the Fire Chief that was also there and said " I don't know if I can tell him!" That is when the officer looked at the plaintiff and first asked for him to put out his cigarette because of the oxygen tanks that were in the ambulance. The plaintiff complied and said " sorry I forgot." That is when Mike McCardel said to the plaintiff " YA YOU FUCKING IDIOT!" After Mike said that the plaintiff returned to the main security office and the next day he then contacted the Equal Employment Opportunity Center ( also known as EEOC).

15. On 9/11/2018 the plaintiff was working at the scale house when a call came in. The plaintiff answered it by saying " Wheeling Nisshin North Gate." That is when a person on the other end was yelling saying " WAKE THE FUCK UP YOU ASSHOLE!" That is when the plaintiff called the Human Resources Department and left a message telling them what was said and what time and date. The plaintiff never heard back from them.

16. Then on 9/16/2018 the plaintiff was working at Main Gate the Plaintiff walked to the back office to drop off paperwork. Once the plaintiff returned to the office the phone rang. The voice on the other end repeated that same phrase. The plaintiff checked the " Caller I.D." when he saw what number it was and what department the call came from the plaintiff then returned to the back office to speak to the on duty supervisor. The supervisor that was on duty was Gary DeLong. The plaintiff reported that call to him as well. That is when he asked what department it was. The plaintiff replied

and told him what Batch pit it was. Gary DeLong replied "That Batch Pit is closed."

17. On 5/17/2019 as the plaintiff was checking the mail and the billing statements. The plaintiff was waiting for the rest of the deliveries to arrive when a supervisor named Tammy Koutsky walked in the main security office and started to yell at the plaintiff because all the packages haven't arrived yet and the plaintiff wasn't able to check those packages.

18. On 7/12/2019 Tammy Koutsky claiming that the plaintiff didn't check all the packages again when in fact those packages didn't arrive until it was close to 13:53 hrs. It wasn't the plaintiff's fault that the UPS and FedEx drivers didn't bring the packages until that time. The plaintiff couldn't have checked those packages because the packages didn't arrive yet. When the packages did arrive the plaintiff checked the packages right away. When the plaintiff was taking the bills back to the supervisor's office the plaintiff ran into Tammy and once she saw the plaintiff she said " NICE OF YOU TO GET THEM DONE!" The plaintiff replied " The packages just arrived. That is when Tammy replied " WHATEVER JUST WHATEVER!"

19. On 7/19/2019 at 09:04 hrs the plaintiff was out of the office to pick up the mail at the post office. The plaintiff received a call over the walkie talkie from Mike McCardel. He asked " Where the Hell are you". The plaintiff replied " I am getting the mail." Once the Plaintiff returned Mike started to yell at him saying " We need the Damn keys for the closet." The plaintiff did have the keys because the key was on the same key chain as the post office box key.

20. Also on 7/19/2019 the plaintiff was leaving the security office to step outside for a cigarette. When a gentleman walked up and asked if the defendant wanted to buy some equipment. While that salesman was talking to the plaintiff the plaintiff directed the salesman to the supervisor Rick Lash. Mr. Lash was at that time standing outside talking to an employee. The plaintiff explained to the salesman that the supervisor is the only one that can decide what

equipment they would buy. The plaintiff pointed to Mr. Lash and told the salesman that is the supervisor that you need to speak with,

21. Once that salesman thanked the plaintiff he walked over to Mr. Lash and asked him if they need any equipment for the mill. Mr. Lash told him " Not at this time." The salesman left and as he left Mr. Lash looked over at the plaintiff in the smoking area and asked " Are you down here at main gate today?" The plaintiff replied " Yes, I am." That is when Mr. Lash yelled at the plaintiff and said " THEN DO YOUR JOB!"

22. The Plaintiff was only obeying state law by NOT smoking within 20 feet of the building door. That is when the Plaintiff extinguished his cigarette and walked to the security office.

23. On 11/30/2019 the plaintiff was in the main security office when his Co- worker walks in and asks about the company insurance. She asked about getting the insurance form to apply for the insurance. The plaintiff went into the filing cabinet where all our security forms are and when the plaintiff opened the drawer a write up on the plaintiff was sitting right on top of the other forms.

24. The date of that said violation was dated 11/27/2019. That violation write up is attached as **Plaintiff exhibit 1.** The violation states that the plaintiff wasn't doing his walk through of the main offices. When in fact not only did he do a walk through, but he also has witnesses. Karen Johns is a office worker in the main office building and the other witness Nathan Montgomery who is a supervisor has seen and talked with the plaintiff while he was doing his walk through of the building.

25. According to the write up it was reported by Rick Lash on the 27th of November 2019. In **Plaintiff's exhibit 2** is the schedule that the plaintiff worked. The plaintiff wasn't even working on that said day. Since the plaintiff filed a complaint with the EEOC Rick Lash has been trying to get the plaintiff fired. That is a violation under the anti- retaliation prevision of the Fair Labor Standards Act. Mr. Lash was making it harder for the Plaintiff to work at Wheeling – Nisshin Inc.

26. The Plaintiff was worried that a supervisor was going to retaliate against him and because the situation was getting worse the plaintiff had a meeting with Mike Stauver from McKeen Group Inc., on September 10, 2019 and requested a transfer. It wasn't until a few months later that there was an opening at the Cardinal Power plant site in Brilliant, Ohio. That is where the plaintiff was transferred to and has been there ever since.

## ARGUMENT:

1. The plaintiff has endured severe abusive acts and harassment by the defendant. By making sexual harassing remarks ( stated above) the plaintiff has been through a lot of stress and pain. This stress has manifested into physical pain and injury.
2. In **Plaintiff Exhibit 3** is a letter written by Jeff Legros on March 20,2017 when the plaintiff was in the restroom vomiting blood. The plaintiff's pain and stress caused by the defendant has caused internal blooding. The plaintiff also has been having anxiety problems. Every time the Plaintiff puts on his uniform and goes to work he has severe anxiety because of fear of further harassment. " A claim of " hostile environment" sexual harassment is a form of sex discrimination that is actionable under the Civil Rights Act of 1964" , **Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986).**
3. The harassment has been so severe the plaintiff doesn't have any other choice, but to file this complaint within this honorable court. "( noting that hostile work environment claims" require harassment that is severe or pervasive") ( emphasis added). In evaluating allegedly discriminatory conduct, we consider it's " Frequency…, its severity ; whether it is physically threatening or humiliating , or a mere offensive utterance; and whether it unreasonably interfers with an employee's work performance." , **Harris v. Forklift systems, Inc. , 510 U.S. 17 and 23 (1993)** .
4. The Plaintiff has tried to mitigate the situation by speaking with supervisors and even after the Plaintiff contacted the EEOC the plaintiff still requested a Mediation hearing to resolve any and all issues that there has been with the Plaintiff and the defendant.

The Plaintiff was notified by the EEOC that the defendant rejected the plaintiff's request. That request is hereby attached as **Plaintiff's exhibit 4**.

5. The only time that some of the harassment stopped is when the EEOC contacted the defendant, but there was still hate and malis acts towards the plaintiff. As stated above pertaining to the plaintiff picking up the mail and the time Rick Lash yelled at the plaintiff for upholding state law and NOT smoking within 20 feet of a building door. Even when the plaintiff was trying to uphold state law he was being yelled at.
6. The defendant doesn't have any respect for state and Federal laws nor do the respect an Employee's rights and laws thereof. The plaintiff is hereby holding the Defendant vicariously liable for their supervisors' actions and failure to put an end to it. " An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate ( or higher) authority over the employee, subject to an affirmative defense when no tangible employment action is taken." , **Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 ( 1998)** .
7. The plaintiff has suffered not only physical harm as shown by **Plaintiff's Exhibit 3** , but has gotten anxiety when he must return to work. The plaintiff has panic attacks due to fear that someone will do or attempt to do any form of harm on him  " To be actionable a " abusive work environment" harassment , conduct need not " seriously affect [ employee's ] psychological well – being, or lead the Plaintiff to " suffe[r] injury." , **Harris v. Forklift systems, Inc. , 510 U.S. 17, 21 – 23 ( 1993).**
8. The sexual harassment by the supervisor Mike should be considered by this honorable court because " Title VII's protection against discrimination in the workplace " because of …sex" applies to harassment between members of the same sex." , **Oncale v. Sundowner offshore Services , Inc., 523 U.S. 75 ( 1998).**
9. The EEOC investigator called the plaintiff claimed that the defendant's Attorney claimed that the complain wasn't valid and that the company Wheeling – Nisshin Inc. cannot be held liable for the actions of their supervisors. When in fact the company fully well knowing of the harassment refused to stop it and because they knew about it they are held as vicariously liable for

their employee's actions. " An employee is a " supervisor" for purposes of vicarious liability under Title VII only if he or she is empowered by the employer to take tangible employment actions against the victim." , **Vance v. Ball State University, 570 U.S. 421 (2013)** .

10. By the defendant failing to stop the harassment just shows that the harassment was out of Mala In Se and that the plaintiff was being harassed with sole intent to hurt and injure the plaintiff. The defendant's actions against the plaintiff was ONLY to humiliate the plaintiff that alone caused a hostel work environment   " It is humiliating and degrading based on sex." ( holding that, to prove a hostile work environment, courts may consider whether conduct is humiliating.) , **Harris v. Forklift systems, Inc. , 510 U.S. 17 and 23.**

11. The defense refuses to correct any misconduct performed by their supervisor and therefore the plaintiff was left without any other choice of action, but to request reparations for the harassment that the plaintiff was subjected to by the defendant  " We do not explicate this vulgar language lightly, but only because its full consideration is essential to measure whether these words and this conduct could be read as having created " an environment that a reasonable person would find hostile or abusive." , **Oncale v. Sundowner Offshore Services, 532 U.S. 75- 81.** " A raft of case … establishes that the use of sexually degrading, gender – specific epithets, such as " slut" , "cunt" , "whore" , and " bitch" , … has been consistently held to constitute harassment based upon sex." , **Winsor v. Hinckley Dodge Inc., 79 F3d 996 ( 10th Cir. 1996).**

## CONCLUSION

1. In conclusion the Plaintiff is hereby requesting Compensatory damages to pay his medical bills that were caused by the stress and harm that was forced on the plaintiff by the misconduct and gross negligence of the defendant. These damages that the plaintiff is suffering from have become a lifelong injury. The plaintiff has to undergo several operations and pain and suffering due to the injuries.
2. The plaintiff also now has anxiety caused by the defendant. The plaintiff gets sick and worried every time he has to go to work because of fear that he will be harassed and no one will stop it. The

plaintiff is also requesting punitive damages for the gross negligence and causing the plaintiff to have such a severe anxiety.

3. The total amount that the plaintiff is hereby requesting is in an amount of $6,500,000.00 dollars. This amount will cover any and all medical procedures and lifelong injury that has been caused by the defendant. The Plaintiff wishes to ask this honorable court to hold the defendant vicariously liable and to rule in his favor. This whole case wouldn't have gone this far ONLY if the defendant would have put a stop to the harassment and helped the plaintiff mitigate the situation. The plaintiff tried to avoid any and all EEOC investigation and court procedures.

Date _6/5/2020_

Paul J. Bukovinsky II, Plaintiff

105 John Drive , Burgettstown,Pa 15021
(Address)

Thefonzz2002@yahoo.com
( email address)

412-398-7524
(phone)